## WOOTER vs. TURNER.

APPEAL from the court of the third district.

The jurisdiction of an appellate court depend on the fact of a judgment being rendered in that of the inferior tribunal from which an appeal lies, and is not affected by the causes which produced that judgment.

PORTER, J. delivered the opinion of the court. This is an action against the defendant curator of the estate of James Nolasco, deceased, in which the plaintiff, in her own right, and as tutrix to her minor children, demands payment of a legacy of $1000 left her. and the residue of the testator's estate, by virtue of a bequest contained in the will, to these children,

and one John Rousso, who is since dead, and whose share belongs to them by right of survivorship.

The petition is rendered obscure, and the understanding of the case difficult, by the plaintiff's having crowded into it a mass of matter that would more properly have belonged to an opposition to the defendant's account when it was presented.

It appears, that two persons, called John Rousso and Antonio Nolasco, were in the habit of the closest intimacy with James Melasco. Rousso died in the year 1811, and, by his will, gave a legacy to James Nolasco. Antonio Melasco, who had been in partnership with Rousso, now formed a connexion of the same kind with James Nolasco, and before his death in the year 1817, made his testament, and bequeathed his estate to the son of his former partner Rousso, and to James Nolasco. No separation of the estate ever took place, and the executors which they respectively appointed, having been discharged, the defendant was appointed curator to the three successions.

The petition sets out all these facts in detail, and avers, that the several legacies left to J. Melasco, by Rousso, and Antonio Nolasco, are yet

Eastern Dist.
*Feb'ary* 1828.

WOOTER
*vs.*
TURNER.

Where the right of a legatee is disputed, he may bring suit to have the claim recognised, tho' judgment cannot be given for any specific amount, until the curator renders his account. And a jury may be called to try the facts on which the legatee's claim is disputed.

unpaid; and concludes with a prayer, that the defendant may render an account of the three estates; that he be condemned to pay the petitioner the sum of one thousand dollars, bequeathed to her by James Melasco, with interest since the 1st January, 1818, and the residue of the estate, which she avers to be $2000.

The defendant pleaded, first, that the suit could not be maintained, because it was against three successions, each having separate and distinct interests; second, that the facts alleged by the petioner were untrue; and third, and lastly, that the estate was insolvent.

If the suit was against the three estates, as the defendant alleged, then we think the conclusion he has drawn is correct. But it appears to us to be against that of James Nolasco alone, and to ask for judgment against the defendant in that character and no other. The prayer at the conclusion is expressly so. The setting out in it, the different claims of James Nolasco's estate on that of Antonio Nolasco and Rousso, and the call on the defendant to render an account as curator of these successions, was most probably the cause of the defendant presenting the objection. But a reference to the situation of the estates, affords a more satisfactory explanation of the objects

sought to be obtained by the insertion of these matters in the pleadings. No separation of the different successions has been made. Jas. Nelasco was the last survivor of the three partners; the amount of his estate depended in a great measure on the sum it should receive from that, of Rousso, and Antonio Nolasco, and the plaintiff deemed it necessary the defendant should render an account of these two successions before it could be ascertained how much she could recover as a legatee. That the insertion of the various facts in the petition, shewing the claims of James Nolasco's estate on the two others, was for this object, and not as laying the basis of distinct claims against the defendant on which she expected judgment, is manifest from the following clause in the petition, in which, after setting out these claims, it states, "that the legacies aforesaid, to him left, by the said John Rousso, under the name and denomination of Santiago Monoyilio, and the legacy to him left, by the said Antonio Nolasco, *constitute a part of the said vacant estate or succession of the said Jas. Nolasco.*"

These statements, therefore, can be considered in no other light, than as averments in the

petition of the various things which constituted the succession of James Nolasco, and the call on the defendant to render an account, nothing more than a demand from him, who, as curator of the other estates, had a knowlege of their situation, to furnish that evidence which would enable the court to judge correctly of the amount of James Nolasco's estate. It would certainly have been more regular, and greatly simplified the proceedings, to have taken no notice of these matters in the petition; and to have called on the defendant to furnish an account of James Nolasco's estate, without avowing in detail of what it was made up. On the account being presented, if the moneys coming to it from the other estates, had not been inserted, an opposition to the account of the curator would have hrought these matters more regularly before the court. But the irregularity of setting them forth in the petition does not so vitiate the proceedings as to require us to nonsuit the plaintiff; though she has somewhat obstructed the road, it is still open and clear enough, to enable her to travel on to final judgment

This case was commenced in the probate court, at a time when an appeal lay from that

tribunal to the district court. The plaintiff, failing to procure any, or sufficient evidence, to make out her case in the court where the action commenced, was nonsuited, and she appealed to the district court, where the cause was submitted to a jury who found a special verdict.

Eastern Dis.
Feb'ary 1828.

WOOTEN
vs.
TURNER.

Before examining that verdict and the objections that have been made to it, it is necessary to notice a point relied on by the defendant in this court; she contends, that as the case related to matters appertaining to the jurisdiction of the court of probates, it was improperly submitted to a jury in the district court—that the plaintiff could not take an appeal from a judgment of nonsuit, rendered on a failure to produce any evidence in the former—that it was an evasion on her part, of the law which requires the probate court to take cognizance of the cause in the first instance, and was virtually giving that of the district, original jurisdiction.

The argument against the legality of submitting the case to a jury in the district court, is principally founded on inconvenience, and though it certainly derives some support from the nature of the transactions which are gene-

rally submitted to probate tribunals, yet it is not of sufficient weight to enable us to make an exception where the legislature made none. Previous to the year 1820, parties had the right even in the parish court, which, as such, possessed probate jurisdiction, to have any contested fact arising between them, submitted to the country. The act passed in that year, fixing the jurisdiction, and regulating the form of proceedings, in the court of probates, directs, that all the causes cognizable by the said court *shall be tried therein,* without the intervention of a jury. The same act gives an appeal to the district court, and is silent as to any change in the mode of trial when the cause goes there The district court, previous to the act, had the power as well as the probate court to try *all* cases by a jury. The prohibition against trying them in that mode thereafter, is confined to the probate tribunal; hence, we conclude the form of proceeding remains the same in the district court as before. We have reason to believe, that the inconvenience of calling the citizens too often from their occupations to serve as jurors, had as much weight with the legislature in causing this enactment, as the incompetency of the tribunal to investigate

cases of the kind. But whether it was or not, on no sound rules of construction, could the clause in the act changing the form of proceeding in one court, be held to apply to another, when in the same law, they provide for the case going before the latter, and are silent as to any change in the mode of trial when it arrives there.

The objection growing out of the fact of the plaintiff having submitted to a nonsuit in the court of the first instance, appears to be quite untenable. The jurisdiction of an appellate court depends on the fact of a judgment being rendered in that of the inferior, from which an appeal lies, not on what preceded that judgment, or the causes that led to it.

The special verdict, as set forth in the record, finds a variety of facts in relation to the matters stated in the petition, the death of Rousso, Antonio Nolasco, and James Nolasco, their partnerships, and their wills; but it does not find any specific sum which the plaintiff should recover, and the defendant contends, that by reason of this defect, no judgment can be rendered on it in favor of the petitioner; of that opinion was the court below, and nonsuited her.

When the claims of a residuary legatee are contested on the grounds which were present- ed by the answer, and put at issue in this cause, it is impossible for the court that tries it, to give judgment for any specific sum. What remains can only be known after the curator has ren- dered his account, and he, by disputing the will, and the right of the person claiming, forces a decision on these facts, before he can be compelled to shew how he administered the estate, and how much is in his hands. Two questions then occ?. —*first*, whether the lega- tee is disqualified to bring an action to have his claim recognised, before the curator renders an account; and *second*, if he can, and does, whether the facts which are necessary to esta- blish his right can be tried by a jury? and if they can, if the verdict establishing this right, but not finding any specific sum due, can be the basis of a judgment of the court? We have not a doubt that the suit may be brought the moment the right is disputed, and that on such a verdict, the court may well pronounce judgment. We have already decided, that in ordinary cases, a creditor may sue the repre- sentative of an estate, who refuses to recognize his demand, and is not obliged to wait until

the tableau of distribution is filed.    We cannot Eastern Dist,
*Feb'ary* 1828.
distinguish the  case  of  a  legatee from that of

WOOTER
*vs.*
TURNER.

any other person having claims against the
succession.    It may be as important to him as
it is to a creditor, not to be obliged to wait un-
til the curator is ready  to  pay,  before he can
have his demand established.

As has been already remarked, it is impos-
sible to ascertain what is the residue of the es-
tate, until the curator renders an account,  the
jury, therefore, cannot find any sum to be due,
but they can find those facts on which the court
is authorised to give a  judgment  that will es-
tablish the right of the plaintiff to whatever will
remain. We know of no technical rule of our
law which forbids it, and surely the ends of jus-
tice are promoted by  sanctioning  the course
pursued in this cause.    We cannot imagine an
instance where  those  courts  of our country,
who  have the  power  to  bring  juries before
them,  are  required  to  decide on any facts;
whether those facts may authorise a  judgment
for a sum of  money,  or  call for a special  de-
cree to meet the justice of the  case,  that the
parties may not have the facts disputed or tried
by a  jury;  there  is  no exception that we are
aware of, unless  in relation to  long and intri-

cale accounts, which the statue directs to be sent before referees.

In this instance the jury have found facts sufficient to enable the court to decree that she and her children ore entitled to the legacies left them by James Nolasco, if there be any sufficient funds to pay them. In order to ascertain this, the cause must be remanded to the court of probates, and the defendant be compelled to render his account as curator.

If, in rendering that account, he fails to insert to the credit of the estate, any moneys which belong to it, whether coming from the succession of John Rousso, Antonio Nolasco, or any other source, the plaintiff, by proper opposition, can bring the fact before the court; any decree respecting them at this stage of the cause, would be premature and illegal.

Nor can we examine now into the claim of survivorship set up in behalf of the children of plaintiff, to the portion left John Rousso, jr. because the attorney for the absent heirs has not been made a party to the suit, and this claim must be decided contradictorily with him.

We had almost forgot to notice the objection taken on the ground, that the estate is insolvent, and that the plaintiff has not shewn there

is any thing in the curator's hands. The ap-
pointment itself, to the office of curator, pre-
supposes property; the inventory and sale
shew it, and the burthen of proving the estate
insolvent devolves on the defendant.

The question as to costs must remain open
until final judgment.

It is therefore ordered, adjudged and de-
creed that the judgment of the district court
be annulled, avoided, and reversed; and it is
further ordered, adjudged and decreed, that
this cause be remanded to the court of probates,
wilh directions to the judge thereof, to compel
the defendant to render an account of his ad-
minis-tration of the estate of J. Nolasco, accor-
ding to law, and that on rendering said account,
he pay to the petitioner the sum of $1000, if so
much remain in his hands after discharging
higher claims against the succession, if any
such there be; and that he also pay over to the
petitioner, as representative to her children, and
as heir to one of them deceased, the one half
of the residue of said estate, after all debts
due by it, and special bequests made by the
will, are satisfied; and it is further ordered,
that the appellee pay the costs of the appeal.